FILED

MAY 3 1 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                                    Case No. 06-11069-A-7

JENNIE MARIE BECAS

        Debtor.
_____/          Adv. No. 06-1303

CADLEROCK, LLC

        Plaintiff,                         FINDINGS OF FACT AND
                                                  CONCLUSIONS OF LAW
    vs.

JENNIE MARIE BECAS

        Defendant.
_____/

      A trial was held May 16, 2007, in this adversary proceeding.  Defendant Jennie Marie

Becas ("Becas") testified.  Plaintiff's Exhibits 1, 2, 3, 4, 8, and 9 were admitted into evidence.

Defendant's Exhibits A through H were admitted.

      This memorandum contains findings of fact and conclusions of law required by Federal

Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.  This is a core

proceeding as defined in 28 U.S.C. §157(b)(2)(G) and (I).

      Jennie Marie Becas filed her chapter 7 petition July 19, 2006.  Cadlerock, LLC

("Cadlerock") timely commenced this adversary proceeding on November 6, 2006.  The

complaint seeks a determination that the obligations of Becas to Cadlerock are nondischargeable

under Bankruptcy Code § 523(a)(4) and (6).  It also seeks entry of judgment in the amount of

1  $23,360 and possession of a fifth wheel trailer. Alternately, it seeks relief from stay.

2  Findings of Fact.

3      Certain underlying facts are not in dispute. In January 2001, Jennie Marie Becas and

4  Billy Jack Smith purchased a 1995 "fifth wheel" Snowbird Travel Trailer (the "Trailer") from

5  Marshall's Travelland in Austin, Texas. In connection with the purchase, they executed a Retail

6  Installment Contract and Security Agreement (the "Retail Installment Contract") with BankOne.

7  In the Retail Installment Contract, they contracted to pay for the Trailer in installment payments

8  of $297.52 per month. They acknowledged that they were giving BankOne a security interest in

9  the Trailer. They also agreed that they were required to insure the Trailer.

10      Pursuant to a Texas Certificate of Title, the first lienholder on the Trailer was BankOne.

11      Subsequently, Billy Jack Smith died. Jennie Becas placed an advertisement in a

12  newspaper that she had a trailer to sell. She was contacted by Doug Clowes, and she agreed to

13  sell the Trailer to him. Jennie Marie Becas and Doug Clowes executed a document entitled

14  "Agreement To Sell Travel Trailer" on January 9, 2002. In that agreement, Clowes agreed to

15  "take over the loan on the trailer of $297.52 a month until the loan is paid off . . ." Also, Clowes

16  gave Becas $1,500 for the Trailer. Becas and Clowes agreed that once the loan was paid off, title

17  on the Trailer would be transferred from Becas to Clowes.

18      Clowes made payments on the Trailer to the lienholder for a period of time. Eventually,

19  he ceased making payments. In January 2005, Cadlerock became the owner of the Retail

20  Installment Contract. Doug Clowes made his last payment to BankOne on or about February 1,

21  2005, in the amount of $300. Prior to that time, in 2004, Becas and Clowes had discussed that he

22  would start making payments through automatic deduction from his bank account. In June 2004,

23  Becas wrote to Clowes sending him the information necessary to have payments made directly

24  from his bank account.

25      However, Clowes never did make those arrangements, and the loan went into default.

26  Becas attempted to locate Clowes without success.

27      In April 2006, an account officer of Cadlerock wrote to Becas demanding payment in full

28  of all principal and past due interest owed on the Trailer. When payment was not forthcoming,

2

1  Cadlerock filed a complaint against Becas in Kern County Superior Court, and Becas filed

2  chapter 7.

3      When Becas sold the Trailer to Clowes, she was aware that BankOne had a security

4  interest in the Trailer. However, it was her agreement with Clowes that he was going to make

5  payments. He made payments for a little over two years. In order to try to find Clowes after he

6  stopped making payments, Becas called every phone number that she had for him. She also went

7  to Texas and looked in RV parks that he was known to frequent. However, she was unable to

8  reach him.

9      Prior to the time she filed her bankruptcy case, she received what she estimates to be 115

10 calls from Cadlerock demanding payment. After she filed her case, and after this adversary

11 proceeding was filed, she received one telephone call at work from a representative of Cadlerock.

12 Becas understood that Cadlerock had taken the loan over from BankOne. Becas never told

13 BankOne that Clowes would be making the payments. However, she did contact BankOne at

14 Clowes' request to get information about how he could make payments automatically through a

15 deduction from his bank account. According to Becas, she did not understand that she was not

16 supposed to sell the Trailer without paying off the lien. The Retail Installment Contract provides

17 as an additional term that Becas and Smith represented and agreed, among other things, that they

18 "will not attempt to sell the Property (unless it is properly identified inventory) or otherwise

19 transfer any rights in the Property to anyone else, without a prior written consent."

20 Conclusions of Law.

21      Bankruptcy Code § 523(a)(4) makes nondischargeable debts "for fraud or defalcation

22 while acting in a fiduciary capacity, embezzlement, or larceny." In seeking to have Becas's

23 obligation declared nondischargeable under § 523(a)(4), Cadlerock is claiming that

24
25      "by delivering the Trailer to a party unknown, in effect abandoning the security and
       causing its loss, and by failing to maintain, preserve and insure CADLEROCK'S security,
26      BECAS has defalcated in her duty while acting as a fiduciary of the Security which was
       entrusted to her, and she should be denied discharge under this debt as to the value of the
27      Security." (Complaint at ¶ 11.)

28      In order to prevail, Cadlerock has the burden to prove by a preponderance of the evidence

3

1    that Becas was its fiduciary and that she committed a defalcation with respect to the security.

2        Cadlerock has not met that burden.   The relationship between Becas and the holder of the

3    security interest in the Trailer did not make her a fiduciary of the holder of the security interest

4    within the meaning of 11 U.S.C. § 523(a)(4).  <u>Collier on Bankruptcy</u> puts it this way.

> "The qualification that the debtor be acting in a fiduciary capacity has consistently, since
> its appearance in the Act of 1841, been limited in its application to what may be described
> as technical or express trusts, and not to trusts *ex maleficio* that may be imposed because
> of the very act of wrongdoing out of which the contested debt arose.  The trust
> relationship must predate and exist apart from the act from which the underlying
> indebtedness arose.
>
> For purposes of § 523(a)(4), the definition of 'fiduciary' is narrowly construed, meaning
> that the applicable state law that creates a fiduciary relationship must clearly outline the
> fiduciary duties and identify the trust property; if state law does not clearly and expressly
> impose trust like obligations on a party, the court will not assume that such duties exist
> and will not find that there was a fiduciary relationship . . . .
>
> The commonplace frauds of the ordinary debtor in disposing of property so as to hinder,
> delay, or defraud his creditors are not within clause (4).  Nor does the phrase "in a
> fiduciary capacity" include or apply to trusts that are merely implied by law from
> contracts."

14    4 Collier on Bankruptcy, ¶ 523.10 (1)(c)(15th ed. Rev. 2007).  Under this definition, nothing in

15    the Retail Installment Contract makes Becas a fiduciary of the holder of the loan.  Thus,

16    Cadlerock has not met its burden of proof in its claim under § 523(a)(4).

17        Cadlerock also seeks to have Becas's debt declared nondischargeable pursuant to

18    § 523(a)(6).  That section makes nondischargeable a debt "for wilful and malicious injury by the

19    debtor to another entity or to the property of another entity."  Cadlerock presents its theory this

20    way in its complaint.

> "While knowing that the Trailer was security for her obligations under the Contract,
> BECAS wilfully and maliciously committed injury to the property of another entity by
> converting the Security and by disposing of and abandoning to an unknown party the
> Security in violation of the contract and without any permission to do so, and by allowing
> the Security to disappear, thereby causing its loss." (Complaint at ¶ 15.)

24        In order for an obligation to be nondischargeable under § 523(a)(6), it must be a debt

25    arising from a "willful and malicious" injury.  In the Ninth Circuit, an injury is "willful" "when

26    there is either a subjective intent to harm, or a subjective belief that harm is substantially

27    certain." <u>In re Su</u>, 290 F.3d 1140, 1144 (9th Cir. 2002).

28        The Ninth Circuit has also outlined the parameters of a "malicious injury."

1    "A 'malicious' injury involves (1) a wrongful act, (2) done intentionally, (3) which
     necessarily causes injury, and (4) is done without just cause or excuse." Id. at 1146-1147.
2    (interior quotations and citations omitted.)

3        Applying those standards to this case, the court concludes that Cadlerock has not met its

4    burden of proof that the debt of Becas to it is for wilful and malicious injury. First, there is no

5    evidence that Becas had a subjective intent to harm Cadlerock or its successor, BankOne. Nor is

6    there any evidence that she had a subjective belief that harm was substantially certain. To the

7    contrary. Becas believed, albeit naively, that the person to whom she sold the Trailer would

8    continue to make the payments owed on it. She contracted with the purchaser for him to

9    continue to make the payments. In fact, he made the payments for about two years before

10   ceasing to make the payments. While the belief of Becas in the reliability of Mr. Clowes turned

11   out not to be warranted, her act in selling the Trailer to him cannot be construed as a subjective

12   intent to harm BankOne/Cadlerock or a subjective belief that harm was substantially certain.

13       Nor is there any evidence that her act was malicious. It is certainly true that it was

14   wrongful to transfer the Trailer to a third party while it was still subject to the Retail Installment

15   Contract. In fact, the Retail Installment Contract itself states (in small print and as part of

16   lengthy "Additional Terms") that Becas agreed not to sell the Trailer until the lender had been

17   paid. She also intentionally sold the Trailer. However, her sale of the Trailer to Clowes only

18   caused injury because Clowes failed to make the payments. Therefore, it did not necessarily

19   cause an injury.

20       Did she have any "just cause and excuse" for selling the Trailer? She testified that she

21   sold the Trailer after her longtime companion and partner Billy Jack Smith had died. She needed

22   the money. She lost their house as well as having to give up the Trailer. Based on her testimony

23   and all the facts of the case, the court finds that her action in selling the Trailer was not malicious

24   within the meaning of § 523(a)(6).

25       Cadlerock has also requested relief from the automatic stay to repossess and sell the

26   Trailer. It is not at all clear to this court that the Trailer is property of the bankruptcy estate. It is

27   not listed on the debtor's schedules. She sold the Trailer before she filed bankruptcy. In fact, the

28   trustee in this case has filed a report of no distribution, and the debtor has been discharged.

5

1    Thus, the request for relief from the automatic stay is at this point moot, and is denied as

2    unnecessary.

3         Counsel for Defendant shall prepare an appropriate from of judgment consistent with

4    these findings of fact and conclusions of law.

5    DATED:  _May 31, 2007

6

7                              WHITNEY RIMEL, Judge
                               United States Bankruptcy Court
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA ) 
) ss.
COUNTY OF FRESNO )

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On *May 31*, 2007, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

James R. Knoles, Esq.
BREWER & BREWER
4533 MacArthur Blvd., Ste. 707
Newport Beach, CA 92660

Frank P. Samples, Esq.
5330 Office Center Court #37
Bakersfield, CA 93309

I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on *May 31*, 2007, at Fresno, California.

*Kathy Torres*

Kathy Torres, PLS

7